UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY SHAW and JOHN SHAW,

      Plaintiffs,

v.                               Case No. 05-70211

JPMORGAN CHASE BANK, NA,        HONORABLE AVERN COHN
a National Banking Association,

      Defendant.

_____/

## MEMORANDUM AND ORDER
### DENYING PLAINTIFFS' MOTION TO REMAND, GRANTING DEFENDANT'S MOTION FOR LEAVE TO AMEND NOTICE OF REMOVAL, GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE, AND STAYING ORDER OF TRANSFER PENDING INTERLOCUTORY APPEAL OF SUBJECT-MATTER JURISDICTION

### I. Introduction

      This is a state-law negligence and breach of contract case. Plaintiffs Terry Shaw and John Shaw (collectively referred to as the Shaws) are suing Defendant JPMorgan Chase Bank, N.A. (JPMorgan) for, inter alia, JPMorgan's alleged mishandling of two bank accounts.[1] Plaintiffs filed the complaint in Washtenaw County, Michigan, Circuit Court, on December 22, 2004, asserting thirteen claims against JPMorgan as follows:

| Count | Claim |
|---|---|
| 1 | Fraudulent misrepresentation; |
| 2 | Negligent misrepresentation; |

---

[1] JPMorgan is the successor by merger to Bank One, N.A. The complaint lists Bank One, N.A. as the defendant, but the notice of removal is in the name of JPMorgan.

3    Breach of deposit contract under MICH. COMP. LAWS §§ 440.4401, 440.3401 et seq.;

4    Conversion under MICH. COMP. LAWS § 440.3420 and common law;

5    Wrongful dishonor under MICH. COMP. LAWS § 440.4402;

6    Breach of the duty of ordinary care under MICH. COMP. LAWS §§ 440.4103, 440.4202;

7    Breach of fiduciary duty;

8    Breach of implied deposit contract;

9    Negligence;

10    Negligent failure to warn;

11    Negligent failure to supervise;

12    Violations of the Michigan Consumer Protection Act (MCPA), MICH. COMP. LAWS § 445.903 et seq.; and

13    Request for reasonable attorneys fees under the MCPA, MICH. COMP. LAWS § 445.911.

JPMorgan on January 20, 2005, timely filed a notice of removal under 28 U.S.C. §§ 1441 and 1446, asserting that the Court has diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

Before the Court are three motions: (1) Plaintiffs' Motion to Remand Under 28 U.S.C. § 1447(c), (2) JPMorgan's Motion for Leave to Amend Notice of Removal, and (3) JPMorgan's Motion to Transfer Venue. For the reasons that follow, (1) Plaintiff's Motion to Remand is DENIED, (2) JPMorgan's Motion for Leave to Amend Notice of Removal is GRANTED, and (3) JPMorgan's Motion to Transfer Venue is GRANTED. As discussed below, the issue of subject-matter jurisdiction raised in plaintiffs' motion to

remand involves a controlling question of law about which there is substantial ground for difference of opinion.  Accordingly, the order to transfer venue is STAYED for thirty (30) days to allow plaintiffs to take an interlocutory appeal of the issue of subject-matter jurisdiction under 28 U.S.C. § 1292(b).

## II. Background[2]

## A. Factual Background

Amy Okoroafo (Okoroafo) was a branch manager of a Bank One branch in Grand Rapids, Michigan.  Plaintiffs say that Okoroafo talked with Terry Shaw and encouraged him to invest money with another Bank One customer, Pupler Distributing Company (Pupler).  Okoroafo told Terry Shaw that Pupler was a long-time good customer of Bank One and that he could earn a significant return on an investment in Pupler.  Terry Shaw periodically lent money to Pupler and took promissory notes in return.  Okoroafo supervised the investment transactions.  She also told Terry Shaw that opening a bank account at Bank One would ease the transfer of funds from Pupler's account to Shaw's account.  In August 2002, Terry Shaw opened a joint checking account with his wife at the Grand Rapids, Michigan Bank One branch that Okoroafo managed (the first account).  In late September 2002, Shaw opened a second joint checking account at the same branch with his brother, John Shaw, and his brother's wife, Mary Ellen Shaw (the second account).  The Shaws say that Okoroafo was personally involved in handling all aspects of the transactions involving their checking accounts.

---

[2] The background is gleaned from the complaint.

3

With respect to the first account, plaintiffs say that between September 11, 2002 and November 4, 2002, a total of $1,515,000.00 in unauthorized transactions was debited from the account.  A bank-generated credit memo also credited the first account with $52,500.00 during this time period.  Terry Shaw became aware of some of this unauthorized activity on October 12, 2002, and two days later he complained to Okoroafo about it.  He instructed her to not transfer funds out of his accounts without his authorization.  Later in November 2002, Bank One returned a deposited item in the amount of $52,500.00, which resulted in an overdraft in the first account totaling $34,274.60.  Bank One also dishonored one of Terry Shaw's checks and assessed returned item fees against the first account.

With respect to the second account, plaintiffs say that on November 4, 2002, a bank-generated credit memo credited the account with $110,250.00 and also that day an unauthorized cashier's check debited the account $100,000.00.  Two days later, Bank One returned a deposited item in the amount of $110,250.00, resulting in an overdraft of $99,449.26.

Plaintiffs say that the unauthorized transactions occurred while Bank One was investigating alleged improper activity in Pupler's account(s).  They say that Bank One's processing of these unauthorized transactions was a result of its attempts to reduce and/or eliminate its own losses resulting from alleged improper activity in Pupler's account(s).  Plaintiffs say that Terry Shaw made numerous attempts to communicate with Okoroafo about his accounts, only to be told that she was either sick, on vacation, or no longer at the branch.  On November 7, 2002, Bank One froze the first and second accounts and demanded plaintiffs pay the overdraft amounts.

4

**B. Procedural Background**

**1. Complaint**

The complaint, as originally filed in Washtenaw County Circuit Court, says that Terry Shaw resides in Quincy, Illinois and that John Shaw resides in Durham, North Carolina.  It also says that Bank One is a national banking association with branches located throughout Michigan, including Washtenaw County.  The amount in controversy is stated as "exceed[ing] $25,000, exclusive of interest, costs, and attorney fees."

**2. Notice of Removal**

JPMorgan, as the successor to Bank One by merger, recites in the notice of removal that the Court has original jurisdiction over the case based on diversity of citizenship jurisdiction.  The notice of removal states that Terry Shaw is an Illinois citizen, John Shaw is a North Carolina citizen, and JPMorgan is a national banking association with its main office located in Ohio.  It also states that the amount in controversy exceeds $75,000, as the complaint alleges more than one-million dollars in unauthorized bank transactions.

**III. Discussion**

**A. Plaintiffs' Motion to Remand**

**1. Parties' Arguments**

The Shaws say that this case should be remanded to state court because the Court does not have subject matter jurisdiction.  Specifically, the Shaws say that there is not complete diversity between the parties.  In support, the Shaws rely on 28 U.S.C. § 1348, which provides, in pertinent part:

5

### § 1348.  Banking association as party

. . .

    All national banking associations shall . . . be deemed citizens of the States in which they are respectively located.

(emphasis in original).  The Shaws say that, based on this statutory language and case law from the Court of Appeals for the Fourth Circuit, JPMorgan is a citizen of, among other places, Michigan and Illinois because it is "located" there by virtue of the fact that it operates branches in both states.[3]  JPMorgan says that the Shaws' interpretation of the statute, i.e., that a bank is a citizen of every state where it has branches, is not correct.  It says that "located" in the statute should be read to mean the state listed on the bank's organization certificate and the state of its principal place of business.  JPMorgan says that its "main office," i.e., the place designated on its organization certificate, is in Ohio, and that its principal place of business is in New York.  Thus, JPMorgan argues, it is a citizen of Ohio and New York under § 1348 and thus complete diversity exists.

### 2. Analysis

    This is a matter of first impression for the Court.  Neither this Court nor the Court of Appeals for the Sixth Circuit has considered the issue, i.e., the meaning of the term "located" in 28 U.S.C. § 1348.  A review of case law from other jurisdictions, however,

---

[3] Thus, the Shaws say, if JPMorgan is deemed a citizen of Michigan, it cannot remove this case to federal court because 28 U.S.C. § 1441(b) provides that "[a]ny other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  If JPMorgan is deemed a citizen of Illinois, there would be no diversity of citizenship because Terry Shaw is a citizen of Illinois.

6

reveals a split in authority.  The Supreme Court recently granted <u>certiorari</u> to consider the issue.  <u>Wachovia Bank, N.A. v. Schmidt</u>, ___ S.Ct. ____, 2005 WL 555377 (June 13, 2005).

### a. The Fourth Circuit's Holding:
### "Located" Means Any State in Which a Bank Operates Branches

The most recent case to address this issue is <u>Wachovia Bank, N.A. v. Schmidt</u>, 388 F.3d 414 (4th Cir. 2004).  In <u>Wachovia</u>, plaintiffs brought suit in state court against Wachovia Bank (Wachovia).  <u>Id</u>. at 416.  Wachovia subsequently filed a petition in the United States District Court for the District of South Carolina seeking an order to compel arbitration.  <u>Id</u>.  The sole basis of subject-matter jurisdiction in Wachovia's petition was diversity of citizenship jurisdiction under 28 U.S.C. § 1332.  <u>Id</u>.  The district court denied Wachovia's petition, but did not address subject-matter jurisdiction.  <u>Id</u>.  Wachovia appealed.  <u>Id</u>.  On appeal, plaintiffs for the first time raised the issue of subject-matter jurisdiction, arguing that there was not complete diversity between the parties because plaintiff was a citizen of South Carolina and Wachovia was "located" in South Carolina under 28 U.S.C. § 1348.  In a two-to-one decision, the Court of Appeals for the Fourth Circuit agreed, holding that a national bank is "located" within the meaning of § 1348 where it operates branch offices.  <u>Id</u>. at 415.  Plaintiffs here urge the Court to adopt this interpretation of the statute.

The <u>Wachovia</u> court reached its conclusion by looking to (1) the ordinary meaning of the word "located," (2) the word's use with the contrasting term "established" in the preceding sentence of the statute, and (3) the Supreme Court's construction of "located" in another statute addressing state court venue for national banks, <u>see</u>

7

Citizens & Southern Nat'l Bank v. Bougas, 434 U.S. 35 (1977).  Wachovia, 388 F.3d at 416.

The Court addresses the Wachovia court's reasoning seriatim.  First, the Wachovia court found that the ordinary meaning of the term "located," based principally on a dictionary definition, refers to physical presence in a place.  Id.  The court then noted that a national banking association becomes physically present is a state when it opens a branch office in that state and conducts business there.  Id. at 417.

Second, the court noted a principle of statutory construction that suggests that different words used in the same statute should be given different meanings whenever possible.  Id. at 418.  Using this principle, the Wachovia court looked to the word "established" in the first sentence of § 1348—the sentence that precedes the sentence at issue in this case:

> The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

28 U.S.C. § 1348 (emphasis added).  The Fourth Circuit held that the ordinary meaning of the word "established" means an original and permanent location.  Wachovia, 388 F.3d at 419.  Taking this meaning, the court concluded that a national bank is originally and permanently established at its main office and temporarily located at its branch offices.  Id.

Third, the Fourth Circuit looked to the Supreme Court's decision in Bougas, which construed the 1864 version of 12 U.S.C. § 94, the venue provision of the National

Bank Act.  The Supreme Court held in Bougas that, for purposes of state-court venue, a national bank is "located" in any county in which it has a branch bank.  Bougas, 434 U.S. at 44.  In so doing, the Supreme Court noted that, despite the fact that national banks were not permitted to engage in branch banking until 1927 and that Congress in 1864 could not contemplate today's national banking system, id. at 43, venue provisions focus on the convenience of the parties.  Id. at 44, n.10.  Accordingly, the Supreme Court held, it would not be unduly burdensome for a bank to be subject to a state-court lawsuit in the county in which it operates a branch.  Id.  The Supreme Court expressly noted that it was not addressing the federal aspect of venue for purposes of 12 U.S.C. § 94.  Id. at 39.  The Wachovia court used this holding in support of its conclusion that, for purposes of federal subject-matter jurisdiction, a national bank is located in any place it operates branches.  Wachovia, 388 F.3d at 419-20.

### b. The Fifth and Seventh Circuit's Holdings: "Located" Means the State of the Bank's Principal Place of Business and the State Listed on the Bank's Organization Certificate

The Fourth Circuit's holding in Wachovia is in conflict with prior holdings from the Fifth and Seventh Circuits.  Of these two circuits, the Seventh Circuit considered the issue first.  Indeed, the Seventh Circuit was the first circuit to ever address this issue.  In Firstar Bank, N.A. v. Faul, 253 F.3d 982 (7th Cir. 2001), Firstar Bank (Firstar) brought a breach of contract claim in federal court against the defendants.  Id. at 985.  The district court's subject-matter jurisdiction was premised on diversity of citizenship, 28 U.S.C. § 1332, because Firstar's principal place of business was in Ohio, Ohio was listed on the bank's organization certificate, and the defendants were citizens of Illinois.  Id. Defendants moved to dismiss on the grounds that the district court lacked subject-

9

matter jurisdiction.  Id.  Defendants argued that there was no diversity of citizenship

because Firstar operates branches in Illiniois.  Id.  The district court agreed and

dismissed the case.  Id.  The Seventh Circuit reversed and held that, for purposes of 28

U.S.C. § 1348, a national bank is "located" in the state where its principal place of

business is found and the state listed on its organization certificate.  Id. at 994.

One of the Seventh Circuit's primary justifications for its holding was its analysis

of the history of the National Bank Act and that of § 1348's predecessors.  In looking at

this history, the Seventh Circuit noted that, until 1882, a lawsuit involving a national

bank could be brought in or removed to federal court because national banks are

formed under federal law and any suit by or against them was a suit arising under

federal law.  Id. at 986 (citing Petri v. Commercial Nat'l Bank, 142 U.S.. 644, 648

(1892)).  In 1882, Congress limited federal jurisdiction over national banks to only what

existed for state banks.  Id. at 986.  The Supreme Court later noted that the Act of July

12, 1882 was "evidently intended to put national banks on the same footing as the

banks of the state where they were located for all the purposes of the jurisdiction of the

courts of the United States."  Leather Mfrs.' Nat'l Bank v. Cooper, 120 U.S. 778, 780

(1887).  Congress later superseded the 1882 Act with an 1887 Act:

> [A]ll national banking associations established under the laws of the
> United States shall, for the purposes of all actions by or against them, real,
> personal, or mixed, and all suits in equity, be deemed citizens of the
> States in which they are respectively located; and in such cases the circuit
> and district courts shall not have jurisdiction other than such as they would
> have in cases between individual citizens of the same State.

Act of March 3, 1887, § 4, 24 Stat. 552, 554-55.  The Seventh Circuit noted that the

1887 Act was the first time Congress used the phrase now present in § 1348, namely

that national banks are "citizens of the States in which they are respectively located. . . ." Firstar, 253 F.3d at 986. The Seventh Circuit also noted that the Supreme Court interpreted the 1887 Act to maintain jurisdictional parity between national banks and state banks or other corporations. Id. See also Petri, 142 U.S. at 650-51 ("No reason is perceived why it should be held that Congress intended that national banks should not resort to Federal tribunals as other corporations and individual citizens might.").

Viewing this history, the Seventh Circuit concluded that in 1948, when Congress enacted § 1348, it "intended for [the statute's] meaning to comport with the judicial interpretations of its predecessors." Firstar, 253 F.3d at 989. Like in Wachovia, defendants in Firstar maintained that the Supreme Court's decision in Bougas, which interpreted the former version of the National Bank Act's venue statute, should control. The Seventh Circuit rejected this argument, noting that (1) the holding in Bougas was carefully limited to determining state court venue; and (2) venue is primarily a matter of convenience of litigants and witnesses, while the traditional justification for diversity jurisdiction is to minimize potential bias against out-of-state parties. Id. at 989-90. The Firstar court summarized its precise holding as follows:

> "'[L]ocated' should be construed to maintain jurisdictional equality between national banks and state banks or other corporations. In order to maintain this parity, national banks would need potentially to be citizens of two different states, since under 28 U.S.C. § 1332(c)(1) corporations are considered to be citizens of both where their principal place of business is located and their state of incorporation. While a national bank is not incorporated in a state, the organization certificate described in 12 U.S.C. § 22 serves a function similar to a certificate of incorporation. This certificate must list a state where the bank's "operations of discount and deposit are to be carried on;" this serves as an adequate substitute for the state of incorporation which is used for state banks and other

11

> corporations.  Therefore, we hold that for purposes of 28 U.S.C. § 1348 a
> national bank is "located" in, and thus a citizen of, the state of its principal
> place of business and the state listed in its organization certificate.

Id. at 993-94 (internal citation omitted).

In 2004, the Fifth Circuit considered the issue.  In Horton v. Bank One, N.A., 387 F.3d 426 (5th Cir. 2004), the plaintiff sued Bank One in Texas state court alleging violations of state consumer protection law.  Id. at 428.  The plaintiff subsequently sent a settlement offer to Bank One, which put the bank on notice for the first time that the amount in controversy exceeded $75,000.  Id.  Bank One removed the case to federal court, and the plaintiff moved to remand on the grounds that diversity of citizenship was lacking because Bank One had branches in Texas and the plaintiff was a citizen of Texas.  Id.  The district court denied the motion and granted the plaintiff's motion to certify the order for interlocutory appeal.  Id.  The Fifth Circuit affirmed, following the reasoning of Firstar.  Id. at 429.  The Fifth Circuit analyzed the 1882 and 1887 Acts addressing federal court jurisdiction over cases involving national banks and, like the Seventh Circuit, concluded that the "goal of jurisdictional parity is best served by interpreting 'located' as referring to a national bank's principal place of business as well as the state specified in the bank's articles of association."  Id. at 430-31.[4]

---

[4] The Fifth Circuit noted that the Office of the Comptroller of the Currency (OCC) issued an interpretive letter after the Firstar decision noting that Firstar's use of the state listed on the bank's organization certificate is incomplete.  Id. at 431, n.26.  The OCC's letter stated that a more thorough position is that a national bank is a citizen of the state (1) in which its principal place of business is located and (2) of either the state that was originally designated in its organization certificate and articles of association or the state to which that designation has been changed.  Id.

12

### c. Application to the Instant Case

The Court finds the positions articulated in <u>Firstar</u> and <u>Horton</u> more persuasive than that of <u>Wachovia</u>.  Under the position plaintiffs advance, which is in accord with <u>Wachovia</u>, a national bank like JPMorgan could not appear in federal court in a case premised on diversity of citizenship jurisdiction if the bank conducted operations in a state where any plaintiff is a citizen.  Given the prevalence of bank mergers and acquisitions in recent years, national banks are conducting operations in more places than ever.  Accordingly, under the <u>Wachovia</u> reasoning, it would be very difficult for a national bank to establish diversity of citizenship and therefore gain access to federal court.  There is nothing in the legislative history of § 1348 to indicate that Congress intended to make the standard required to give a national bank access to federal court any more stringent than that required of a corporation.

When Congress enacted the National Bank Act in 1863, the concept of bank branching was not contemplated.  Indeed, national banks could not engage in branch banking until 1927 with the passage of the McFadden Act.  <u>See</u> <u>Northeast Bancorp, Inc. v. Bd. of Governors of Fed. Reserve Sys.</u>, 472 U.S. 159, 171 (1985).  Of particular significance to the Court is the fact that the statutory language in § 1348's predecessor, an Act of March 3, 1887, is the same language present in § 1348, which became effective in 1948.  When Congress chose the language in § 1348's predecessor in 1887, national banks could not engage in branch banking.  Sixty-one years later, however, when § 1348 became effective in 1948, branch banking did exist.  Notably, Congress did not change the language of the statute.

13

> That **all national banking associations** established under the laws of the United States **shall, for the purposes of all actions by or against them,** real, personal or mixed, and all suits in equity, **be deemed citizens of the States in which they are respectively located**; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State.

Act of March 3, 1887, § 4, 24 Stat. 552, 554-55 (emphasis added). At the time this statute was enacted, a national bank's activities were confined to the single location stated in its organization certificate. See Bougas, 434 U.S. at 42-43. After Congress sanctioned branch banking in 1927, which then permitted a national bank to conduct its business in numerous locations, Congress chose not to modify the statute's language:

> All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

28 U.S.C. § 1348.

Plaintiffs' interpretation of § 1348, which is in line with the Fourth Circuit's interpretation in Wachovia, suggests that changed circumstances, i.e., an increase in branch banking, should therefore change the meaning of the statute. The legislative history does not support such a peripatetic reading of § 1348. Accordingly, the Court concludes that the more appropriate rule is to find a national bank to be located, within the meaning of § 1348, in the state in which its principal place of business is located and in the state listed on its organization certificate.

Applying that rule here, the record establishes, through the affidavit of Marie I. Jordan (Jordan), assistant secretary of JPMorgan, that JPMorgan's principal place of business is in the state of New York and that its organization certificate lists the state of Ohio. Going further, as Horton did, and examining JPMorgan's articles of association

14

establishes that the bank's "main office" is in Columbus, Ohio. Jordan's affirmations are

supported by copies of the following:

> (1)    the OCC's "Certificate of Corporate Existence and Fiduciary
>        Powers" for JPMorgan, dated November 17, 2004, which
>        states "JPMorgan Chase Bank, National Association,
>        Columbus, Ohio, (Charter No. 8) is a National Banking
>        Association formed under the laws of the United States and
>        is authorized thereunder to transact the business of banking
>        and exercise Fiduciary Powers on the date of this
>        Certificate;"
>
> (2)    a certificate from the OCC dated November 13, 2004, stating
>        that "JPMorgan Chase Bank located in New York, State of
>        New York, has complied with all provisions of the statutes of
>        the United States required to be complied with before being
>        authorized to commence the business of banking as a
>        National Banking Association;" and
>
> (3)    JPMorgan's articles of association, dated July 12, 2004,
>        which states "The main office of the Association shall be in
>        the City of Columbus, County of Delaware, State of Ohio."

The Shaws make much of the fact that Bank One "historically saturated the

states of Michigan and Illinois." This statement is of no moment, however, because

Bank One, National Association, merged with and into JPMorgan on July 1, 2004. See

Jordan Aff. at ¶ 3. The Shaws filed their complaint on December 22, 2004, after the

merger took place. Thus, JPMorgan is the successor by merger to Bank One, N.A., and

the Court must examine the state of JPMorgan's principal place of business and the

state listed on its organization certificate, which, as discussed above, is New York and

Ohio, respectively. It is also important to note that the documents JPMorgan submitted

as proof of its citizenship for purposes of § 1348 all are dated after the merger between

JPMorgan and Bank One. As plaintiffs are citizens of Illinois and North Carolina, there

exists complete diversity of citizenship between the parties.

15

**B. JPMorgan's Motion to Amend Notice of Removal**

Plaintiffs also complain that JPMorgan's notice of removal is facially defective because JPMorgan did not identify its principal place of business. JPMorgan seeks to amend the notice of removal so it can allege that its principal place of business is in New York. Plaintiffs oppose the motion because they say it is futile. Plaintiffs say that, based on the holding in <u>Wachovia</u>, the Court does not have subject-matter jurisdiction because JPMorgan operates branches in Michigan and Illinois. As discussed above, the Court declines to follow the <u>Wachovia</u> holding. Accordingly, the motion is not futile. JPMorgan is permitted to amend the notice of removal, and this case will not be remanded to Washtenaw County Circuit Court.

**C. JPMorgan's Motion to Transfer Venue**

**1. Legal Standard**

Under 28 U.S.C. § 1404(a), a district court is permitted to transfer "any civil action to any other district or division where it might have been brought." A district court "has broad discretion to grant or deny a motion to transfer [a] case." <u>Phelps v. McClellan</u>, 30 F.3d 658, 663 (6th Cir. 1994). The Court gives deference to the Plaintiff's choice of forum, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." <u>Stewart v. Dow Chem. Co.</u>, 865 F.2d 103, 106 (6th Cir. 1989) (quoting <u>Gulf Oil Co. v. Gilbert</u>, 330 U.S. 501, 508-09 (1947)). "A plaintiff's chosen forum, however, is not sacrosanct, and it will not defeat a well-founded motion to transfer venue. This is especially true when the plaintiff has little or no connection to the chosen forum." <u>Audi AG and Volkswagon of Am., Inc. v.</u>

16

D'Amato, 341 F. Supp. 2d 734, 750 (E.D. Mich. 2004) (internal citations omitted).

## 2. Analysis

JPMorgan says that this case should be transferred to the Western District of Michigan because (1) all events giving rise to this case occurred within that district, i.e., in Grand Rapids, Michigan; and (2) the witnesses (e.g., banking center employees and people connected with Pupler) are located in Grand Rapids.  Additionally, JPMorgan notes that numerous lawsuits relating to the factual allegations in this case have been resolved or are pending in the Western District of Michigan:

(1)    Daniel Broucek (Broucek), who operated Pupler, is a Chapter 7 debtor in bankruptcy proceedings before the U.S. Bankruptcy Court for the Western District of Michigan, In re Daniel Broucek, a/k/a Pupler Distributing Co., No. 02-12883 (W.D. Mich);

(2)    Broucek was sentenced to seven years in prison in U.S. v. Broucek, No. 04-00113 (W.D. Mich);

(3)    The Pupler bank account was the subject of U.S. v. Bank Account No. 270009400106, in the amount of $6,072,802.69, located at Bank One, Grand Rapids, Michigan, in the name of Daniel Morris Broucek, d/b/a Pupler Distrib. Co., No. 02-831 (W.D. Mich.); and

(4)    Claims like those plaintiffs allege here are pending in Prime Fin. Servs., LLC v. JPMorgan Chase Bank, NA, No. 04-0414 (W.D. Mich.).

The Shaws say that venue is proper in this district because of JPMorgan's substantial presence in this district.  They say they originally filed this case in Washtenaw County Circuit Court because JPMorgan "has numerous places of business and conducts systematic and continuous business in Washtenaw County."  The Shaws' arguments against transfer of venue focus on conveniences of plaintiffs and their counsel:

17

- "[T]he Bank possesses the resources to conveniently litigate in either federal district in Michigan.  However, Plaintiffs do not possess those same resources;"

- "Detroit Metropolitan airport is an easy place for out-of-state Plaintiffs to fly into to attend case proceedings and trial;"

- "Plaintiffs' legal counsel is present only in this district;"

- "[W]ith the arrival of e-filing in the Eastern District last year, court papers can be easily filed with the Court in Detroit by both sides without resorting to overnight mail and/or other expensive delivery fees for filing court papers;" and

- "If you were to plug Durham, North Carolina into the Northwest Airlines website for flight itineraries, you would probably find that every Northwest flight from Durham to Grand Rapids includes a significant layover at Detroit Metropolitan airport, i.e. this district;"

The Shaws' arguments are unpersuasive and border on being frivolous.  To the extent they argue that litigating in the Western District would inconvenience their counsel, that position is not a factor when analyzing a motion to transfer venue.  Hite v. Norwegian Caribbean Lines, 551 F. Supp. 390, 395 (E.D. Mich. 1982) ("the convenience of counsel is not a relevant factor under 28 U.S.C. § 1404(a).").  The other arguments in opposition to this motion are equally weak.  To the extent plaintiffs are concerned about delivery fees for filing court papers, even though such a concern would not be enough to keep the case in this district, the Western District has electronic filing just as this district does.

While it is true that the Court generally gives deference to the plaintiffs' choice of forum, such deference should not be given when the plaintiff has no connection to the forum.  See D'Amato, 341 F. Supp. at 750.  This is the case here.  All of the events giving rise to this case occurred in Grand Rapids, Michigan, which is located within the

18

Western District of Michigan.  Plaintiffs simply have no connection to this district.
Because JPMorgan has branches in this district does not militate in favor of keeping the
case here.  It is more appropriate for this case to proceed in the Western District of
Michigan.

## IV. Certification

Because the issue raised in plaintiffs' motion to remand with respect to subject-
matter jurisdiction is a matter of first impression for the Court, it is a critical issue that
ought to be resolved by the Court of Appeals for the Sixth Circuit.  The controlling
question of law is as follows:

> For purposes of determining the citizenship of a national bank under 28
> U.S.C. § 1348, is a national bank deemed a citizen of (1) the state listed in
> its organization certificate and the state where it has its principal place of
> business, or (2) every state in which it maintains a branch?

Accordingly, this question is hereby certified as one that plaintiffs may immediately
appeal under 28 U.S.C. § 1292(b).

SO ORDERED.


                                          s/Avern Cohn
Dated:  June 29, 2005                          AVERN COHN
                                     UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was sent to counsel of record on
this date, June 29, 2005, by electronic and/or ordinary mail.

                                          s/Julie Owens
                                     Case Manager, (313) 234-5160


19